UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

-------------------------------------------------X
UNITED STATES OF AMERICA          :
                                  :
         v.                       :
                                  :   Crim. Action No. 22-10 (RJL)
AVERY MACCRACKEN,                 :
                                  :
         Defendant.               :
-------------------------------------------------X

**AVERY MACCRACKEN'S MEMORANDUM IN AID OF SENTENCING**

Avery MacCracken came to Washington, D.C. on January 6, 2021 at the invitation of President Trump, who told his followers that the election results were incorrect, that this created a national security threat, and that his supporters should go to the Capitol to "fight like hell" on his behalf. The rhetoric used by President Trump and those around him had the desired effect, and Mr. MacCracken, along with hundreds of thousands of other Americans, was convinced to travel to Washington D.C. to support then President Trump. The job of this Court, however, is not to punish Mr. MacCracken for the acts of others, but to consider what Mr. MacCracken did – *and did not do* – that day. With that focus, and for the reasons stated below, the Court should sentence Mr. MacCracken to the five months he already has served in prison – time that he was forced to serve far away from his family, without eyeglasses, because the government chose to pay no attention to and allowed the BOP to directly and repeatedly violate a Court Order requiring that he remain in Colorado. Importantly, regardless of where he was and where he walked to that day – there is no evidence he had any understanding of the

landmarks in Washington D.C. and he did not assault anyone – especially not law enforcement.

I.   MR. MACCRAKEN'S CONDUCT

Mr. MacCracken's travel plans did not include thoughts of violence or arrest. For this reason, the government's sentencing submission points to no Internet post or comment by him threatening violence or showing that he intended to go to D.C. to riot. He came to exercise his right to protest, and he came without weapons or armor,[1] and without any plan to disrupt or harm. Mr. MacCracken spent most of the day of January 6, 2001 talking to others and looking to hear speeches and be engaged as a citizen. Discord was not his goal.

The government spends a lot of pages talking about what others near Mr. MacCracken said or did. The government talks about others in the crowd who fought the police and others who threw objects and brought weapons. When it comes to Mr. MacCracken, however, the government can only admit that he did none of those things – that all he did was move to the front of the crowd, climbed to the top of an inauguration stage so he could take pictures with his phone, and then left when the police began clearing the stage.[2]

---

[1] As the government notes in its submission, Mr. MacCracken was wearing a blue jacket, a red hat, and prescription sunglasses. He wore nothing unusual that would indicate any preparations by him to participate in a riot. What the government describes as a mask was a kerchief, commonly worn in the tourist town of Vail, Colorado, which Mr. MacCracken wrapped around the bottom of his face because of COVID and because it was windy and cold that day. Many of the police officers there took the same precautions against the weather and the Covid-19 pandemic.

[2] The rest of the government's descriptions talks of the violent actions of others in the vast crowd or tries to imply wrongful actions that Mr. MacCracken simply did not do. Thus, Mr. MacCracken did not throw or remove a bike rack that the police were using as a barrier, but the government does accuse him of "gripping" it "with both hands." Govt. Submission at 6. Likewise, Mr. MacCracken did not fight or hit anyone, but he did sometimes walk with his hands in fists "as if" he might. *Id.* at 7. Constantly and repeatedly, the government uses freeze frames (which show Mr. MacCracken being grabbed and pushed by the police, not

Mr. MacCracken went toward the Capitol building with thousands of people. His journey to (but not into) the Capitol building included being pushed by others around him. Mr. MacCracken was never on the affirmative side of the pushing – he was not the aggressor and did not push to hurt or injure anyone around him. There was no "tussling," as the government asserts. Eventually he found a spot on a stage where he had a vantage point, a little more room, and could take pictures with his phone. He left that stage when the police began clearing it, while others stayed to riot.

At no time did Mr. MacCracken enter the Capitol. Nor did he in any way assault anyone. Mr. MacCracken did not cause any damage to property, he did not take anything, and did not leave anything improper. He has accepted responsibility for his limited conduct – staying in a restricted area without permission to do so – by waiving his right to pretrial motions and trial, agreeing to a stipulated set of facts, and entering a plea of guilty before this Honorable Court.

Contrary to the government's bald assertions, Mr. MacCracken is among the least culpable defendants being prosecuted for offenses committed on January 6. Unlike his co-defendant, he entered a guilty plea in this matter without filing motions or demanding a trial. His brief, non-violent foray in the direction of the Capitol building, which he did not enter, has already resulted in significant hardship to him. Given his limited conduct, his age and current ill-health, and the

---

the other way around), purple language, and the novel argument of "guilt by proximity" to try and paper over the fact that Mr. MacCracken hit no one, threw nothing, and committed no acts of violence that day. *See id.* at 5-15. Try as they might, the government can't concede they wrongly accused Mr. MacCracken of assault.

improper hardship he suffered while in custody, we ask the Court to impose a sentence of time served.

II.   PROCEDURAL HISTORY

On December 17, 2021, Mr. MacCracken was charged with 6 counts related to his presence at the Capitol on January 6, 2021. He was arrested in Colorado and sought bail. 21 MJ 206 (GPG)(Colo); Docket Entry # 7.

Based on the inaccurate testimony from law enforcement, he was held detained by a magistrate judge in Colorado. 21 MJ 206 (GPG); Docket Entry # 8. Based on facts provided to the Court by FBI Special Agent Alex Zappe during a detention hearing held in the District of Colorado, Mr. MacCracken was denied bail and held detained.  See, **Exhibit A** (Transcript of detention hearing before Magistrate Judge Gallagher.  Mr. MacCracken suffered in detention but holds no grudge against law enforcement (or the prosecutor) for its conduct that led to his detention for five months.

His first appearance in the District of Columbia occurred on December 22, 2021. Because he was arrested at the height of the COVID-19 pandemic, the appearance was virtual. *See* Docket Entry, dated December 22, 2021.  Mr. MacCracken needed additional time to speak with his assigned counsel (I was then an AFPD in the District of Columbia), and Magistrate Judge Faruqui granted Mr. MacCracken's request to consult with assigned counsel in the District of Columbia.

The matter was re-set for December 28, 2021 at which time Magistrate Faruqui held a hearing and denied bail for Mr. MacCracken, who was being held detained in a facility in Colorado. On December 29, 2021, recognizing Mr. MacCracken's age (70 years old), his poor eyesight and other age-related issues, and the on-going COVID-

19 pandemic, Magistrate Faruqui granted Mr. MacCracken's request to remain held in Colorado where he had his children and other support system. Docket Entry # 9. In his Order dated December 29, 2021, Magistrate Zia Faruqui noted:

> Upon consideration of the *Defendant's health* and in the interest of justice, it is hereby ORDERED that the United States Marshals Service STAY Defendant's removal to the District of Columbia. Defendant must remain at the detention facility he is currently housed. It is further ORDERED that if the Government believes it is in the interest of justice to transfer Defendant to the District of Columbia, the Government must file a motion requesting Defendant's transfer and explaining the basis for the request. SO ORDERED.

Docket Entry # 9. Despite this Order, Mr. MacCracken was transported, in custody, and in poor health from Colorado to the District of Columbia. At the same time, the government sought, and was granted additional time (over Mr. MacCracken's positon) to indict the case. With no notice to the Court, the government or the defense, Mr. MacCracken was lodged at the Central Virginia Regional Jail, where he remained, with no ability to contact his family or his counsel. This transport violated the Court's December 29, 2021 Order and despite the many efforts on Mr. MacCracken's behalf he remained in Central Virginia Regional Jail.

On March 18, 2022, the Magistrate Court (Hon. Faruqui) heard from the parties – defense counsel and the prosecutor's office. Despite assurances from the United States, the government had no explanation for Mr. MacCracken's transfer in violation of Judge Faruqui's December 29, 2021 Order, and repeated the same refrain: "we have reached out to the government about Mr. MacCracken's transfer back to Colorado, and had "been in touch with the Marshals to see what needs to be done to have Mr. MacCracken transported back" and then asked defense counsel if we had "any information on a federal facility in Colorado that can accept Mr.

MacCracken," and that the government would be "happy to provide that information to the Marshals."

Defense counsel promptly informed the government that the USMS have contracts with several local jails around Colorado, that the GEO immigration detention center in Aurora, the Federal Detention Center in Englewood (next to FCI Englewood) or the downtown Denver Detention Center were available options. The government failed to respond to the defense's missive and provided no updates. To facilitate transfer back to Colorado, counsel for Mr. MacCracken (David Kraut) has reached out to the United States Marshal Service in Colorado, namely United States Marshal Mel-Jovan Sanchez. USM Sanchez has agreed to request Mr. MacCracken's transfer back to Colorado upon receipt of confirmation from this Court that it agrees with and re-affirms the Judge Faruqui's intention that Mr. MacCracken be returned to District of Colorado. On March 29, 2022, this Court granted the relief sought, endorsed Judge Faruqi's Order dated December 29, 2021, Ordered Mr. MacCracken's transfer to Colorado.

Despite the Order from this Court, Mr. MacCracken was taken to the Northern Neck Regional Jail and remained there until April 8, 2022. Northern Neck Regional Jail confiscated Mr. MacCracken's glasses, and he was unable to see for days at a time. Throughout, and up until May 9, 2022, Mr. MacCracken through his counsel noted that the facts as stated in the complaint and believed by the government were wrong. Mr. MacCracken had not assaulted anyone.

From the date of his arraignment in the District of Columbia (January 13, 2022, when he pleaded not guilty to the indictment, counsel for Mr. MacCracken reached out to the Government regarding the facts underlying the assault alleged in

the indictment. Repeatedly, Mr. MacCracken noted that he was not the person who had punched an officer in the face causing a laceration. Finally, on May 9, 2022, the Government conceded it was wrong --- and that Mr. MacCracken likely was not the individual who punched the victim police officer as originally alleged. Mr. MacCracken was finally granted bail and released from custody. He had spent 5 months in custody being jostled from a jail in Colorado to jails in Virginia.

Mr. MacCracken entered a guilty plea on October 20, 2023. He plead to violating 18 U.S.C. Section 231(a)(3). As a result of his guilty plea, Mr. MacCracken faces a guidelines range of 8 to 14 months.

III.   OBJECTIONS TO PRESENTENCE INVESTIGATION REPORT

Pursuant to 18 U.S.C. § 3553(a), Rule 32 of the Federal Rules of Criminal Procedure, and Section 6A1.3 of the advisory United States Sentencing Guidelines ("USSG"), Mr. MacCracken states that he has reviewed the Pre-Sentence Investigation Report (PSR) and noted his objections to Probation Officer Spicer in a filing on the Court docket. The government, in its objections to the PSR, again conceded that it had misapprehended the facts, that those facts had led to Mr. MacCracken being held without bail, and conceded that Mr. MacCracken had in fact not hurt or even tried to hurt anyone. *See* Exhibit A.

IV.   APPLICATION OF THE §3553(a) SENTENCING FACTORS

The primary directive in § 3553(a) is that the Court must impose a sentence that is "sufficient, *but not greater than necessary*, to comply with" the purposes sentencing. *See* 18 U.S.C. § 3553(a) (emphasis added). The parsimony principle is paramount and where two sentences equally served the statutory purpose of § 3553, it could not, consistent with the parsimony clause, impose the higher.

Because of the thoroughness of the pedigree and personal characteristics recitation in the PSR, those facts are not repeated here. But we do note that the government strongly focuses on the past, instead of the person who stands before the Court on the day of sentencing. Thus, the government talks about a trespassing charge in 1996, and a marijuana growing conviction in 2004. Govt. Submission at 18. The government also claims Mr. MacCracken is "very healthy" for a 70-year-old (*id.*), which it can only do by entirely ignoring the fact that, in January of 2024, Mr. MacCracken was hurt in a car accident and has been getting medical care, including physical therapy at Compass Medical Center in Montrose ever since. He goes for physical therapy twice a week – every Monday and Thursday.[3]

The person before the Court on sentencing is the one who admitted his guilt, is sorry for his offense, and has been in full compliance with the conditions of his release since he was released from jail two years ago.

A.   **The nature and circumstances of Mr. MacCracken's offense**

After the presidential election, former President Trump, members of his inner circle, and some members of the media began circulating the word that the election was "stolen." These claims spread on local, social and national media. Many, including Mr. MacCracken believed that the democratic process had been undermined by fraud, and when President Trump said WE HAVE JUST BEGUN TO FIGHT!!!, many felt the need to support him, and Mr. MacCracken was one of those 1000s. Unlike many others, Mr. MacCracken was not a vocal, virulent or violent supporter. He did not post on any social

---

[3] Mr. McCracken was asked about his health in the context of COVID-19 and about his health after the accident in January 2024. While the government tries to push the narrative of a healthy 70-year old man, that is not Mr. MacCracken.

media and did not incite others to follow. Unlike others he did not enter the Capital Building; in fact, he did not go to Washington D.C. with a goal in mind.

Unlike others present on that day, Mr. MacCracken did not go to the Capitol wearing military attire. He did not have a helmet or protective clothing. He did not have anything that could be used as a weapon. He did not mask his face or cover up any part of his being. He was not seeking to reach the Senate Chamber. He was not looking for particular legislators. He never entered the building. He was not vocal on social media and did not retweet the apocalyptic and chest-thumping language coming from the then-President and his supporters both on television and online. Since his arrest, Mr. MacCracken has gone back to his daily life in Colorado. He never had any real plan to return to Washington, D.C. Proof of this comes from his conduct over the past two years. Unlike others, he has never returned. He has moved on and resumed life in Colorado. He has been fully compliant with his conditions of release and is said to have a positive and even collegial relationship with his pretrial services officer.

B. **Avoiding disparities**

There is no case similar to that of Mr. MacCracken. No other defendant was incorrectly held detained when first presented and held on charges that later turned out to be false. See **Exhibit B** (statements by DOJ conceding the improper charge of assault). Through no fault of his or his counsel in Colorado, Mr. MacCracken was detained as the Magistrate Judge was led to believe that he had assaulted an officer. He had not.

C. **The need to provide just punishment and deterrence**

Given the consequences Mr. MacCracken has already endured due to his conduct, adding additional jail time would be overly harsh. Deterrence encompasses

two goals: general deterrence, or the need to deter crime generally, and specific deterrence, or the need to protect the public from further crimes by this defendant. *See* 18 U.S.C. § 3553(a)(2)(B-C); *United States v. Russell*, 600 F.3d 631, 637 (D.C. Cir. 2010). Specific deterrence is obtained for the defendant by the prosecution and conviction itself. The personal and reputational consequences Mr. MacCracken has suffered are more than sufficient to discourage him from engaging in similar conduct. As for general deterrence, the prosecution itself (and the publicity of conviction) all serve as a significant general deterrence. *See, e.g., Wayte v. United States*, 470 U.S. 598, 607 (1985) (observing that any prosecution has a "general deterrence value"); *United States v. Gamarra*, 940 F.3d 1315, 1321 (D.C. Cir. 2019) (observing that prosecution itself provides general deterrence). Sentencing Mr. MacCracken to additional time in prison for his conduct is not the salve that the country needs to ensure that January 6 was an isolated event, particularly taking into account the consequences he has already faced for his conduct. Empirical evidence proves that the certainty of prosecution, rather than the severity of punishment is the greater deterrent. *See* National Institute of Justice, *Five Things About Deterrence* (June 5, 2016), full article available at https://nij.ojp.gov/topics/articles/five-things-about-deterrence.

  **D.**   **Rehabilitation is complete**

  Mr. MacCracken continues to do odd jobs and seasonal work for the citizens of Vail, Colorado. Recently he has worked for Polly Leach-Lychee since April of 2023. Ms. Leach-Lychee is a Broker/Owner Telluride Properties, and is aware of Mr. MacCracken's actions on January 6th, his arrest and conviction by plea for that conduct. She can be reached at 970 728-0600.

If called, she would confirm that Mr. MacCracken does chores for her and continues to work for her business.[4] Ms. Leach-Lychee is about 75 years old. When Mr. MacCracken first started working with her, helped her move out of her home which was being renovated top to bottom. He helped her empty out and move out of her house all the fixtures and furnishings so as to allow for remodeling. He planned, arranged and took all the steps that would allow for a smooth move into a temporary house while her home was being remodeled. As an employee, Mr. MacCracken does fencing and rock work for her properties. When there is need for demolition before the remodeling of one of the properties she is selling, he does that as well. Mr. MacCracken is paid an hourly rate 20 an hour and he is paid by check.

Ms. Leach-Lychee notes "Avery was always on time, kept accurate time sheets and was honest in his money accounting. He never cheats on his time sheets." She goes on to say, "Avery is very thorough; sometimes overly through and is concentrated on any task that you give him. He gives good input on ways to improve processing and is extremely thorough and diligent with any task he is given." At times, she disagrees with his suggestions, and Mr. MacCracken "does as I tell him to do and does not argue with me." He shows up on time and is honest with his timesheets, and extremely thorough. He plans out the tasks, contracts with others and gets things done."

Mr. MacCracken's income from these jobs allows him to support himself, although after his car accident in January of 2024, he has not been able to work as

---

[4] The statements ascribed to Ms. Leach-Lychee in this sentencing submission are from phone calls with her by defense counsel.

much. Nevertheless, Ms. Leach-Lychee is happy to work him back into her schedule. He is not in need of any further punishment to achieve the goal of rehabilitation. Mr. MacCracken lives out of his mobile home, has been compliant with conditions of release and has no presence on any social media. Ironically, he tried to but did not know how to shut down his Facebook account.

## CONCLUSION

For the foregoing reasons and such others as may be presented at the sentencing hearing, Mr. MacCracken respectfully requests that the Court impose a sentence of time served. No additional time in jail is needed. His time in custody was unfairly difficult, he was transported despite a Judge saying he need not be moved to Washington D.C., and was left unable to see for weeks at a time. And, this was during the COVID-19 pandemic when detainees were in lockdown. Mr. MacCracken has been specifically deterred and presents no risk of recExdivism. The residents of Washington D.C. need not fear his return – he is an entirely changed man, and one that looks forward to ending his days in peace.

Respectfully submitted,

/s/ Sabrina P. Shroff
Counsel to Avery MacCracken

& Office of the Federal Public Defender
District of Columbia